UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL ALBANESE, | No. 2:22–cv–1131–KJN (CONSENT) |
| Plaintiff, | ORDER |
| v. | (ECF No. 8.) |
| CITY OF OROVILLE, et al., | |
| Defendants. | |

This case concerns whether, at this stage of the pleadings, plaintiff may proceed with federal civil rights and associated state-law claims against a police officer and the city where plaintiff stood some distance away from the scene of an arrest to record the incident, refused an order from an officer to back up, and was arrested for interference under Cal. Pen. Code § 148(a). The case is not dismissible. California law does not permit arrest for obstruction solely because a person records law enforcement officers, and plaintiff alleges this was what he was doing. Clearly established law would inform a reasonable officer that this alleged conduct was protected by Section 148(g) and the First Amendment. Thus, the court DENIES IN PART defendants' motion to dismiss and allows for amendment of the Monell claim for more facts to be stated.[1]

---

[1] This case was directly assigned to the undersigned by operation of subsection (m) of Appendix A of the court's local rules. (See ECF No. 6.) Thereafter, all parties consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c), and the case was authorized to proceed before the undersigned for all further proceedings. (ECF Nos. 7, 9, 10.)

**Background**[2]

On September 23, 2021, plaintiff Samuel Albanese was recording Oroville Police Department officers conducting an arrest of an unidentified man on a street corner. Albanese was standing approximately 20 feet from the officers behind a hedge while filming. As the officers directed the arrestee to sit on the curb, Officer Sanzone quickly waived his hand in Albanese's direction and said "back up, back up"; Officer Sanzone then turned his back to Albanese. Albanese quickly retorted: "I'm good, we're good Sanzone, don't give me that f***ing s***." At this comment, Officer Sanzone returned his attention to Albanese, saying "you're interfering." Albanese argued with Officer Sanzone that he was not interfering, asserting that interference was physical only and that his recording of the scene was protected under 148(g) (that probable cause for obstruction cannot be based solely on the fact of a person's recording of a public officer). Officer Sanzone then moved approximately ten feet from Albanese, told him to "back up," and pointed away from the arrestee. Plaintiff again refused to move, reasserting his right to record the scene. Officer Sanzone then moved within a few feet of Albanese and said "stand over there . . . we're doing something here, you're interfering." Albanese responded "then [lock] me up." Officer Sanzone paused, then instructed Albanese to turn around so he could be placed under arrest. Officer Sanzone said "I asked you to stand away," and Albanese reasserted his right to film the other encounter under section 148(g).

**Procedural Posture and Parties' Arguments**

Albanese's complaint alleges: (I) Wrongful Arrest under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment right to be free from unlawful seizures (as well as unnamed rights under the Fifth and Eighth Amendments); (II) a Monell claim against the City of

---

[2] These facts from the complaint (ECF No. 1) are taken as true and viewed in a light most favorable to plaintiff, the non-moving party, to the extent they are not contradicted by other evidence in the record. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Papasan v. Allain, 478 U.S. 265, 283 (1986). The facts from the complaint are supplemented by facts drawn from the video footage submitted by plaintiff (see ECF No. 12 at Ex. A) in support of his opposition briefing. Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (noting how matters outside the pleadings could be considered on a motion to dismiss where the evidence's authenticity was not contested and its contents form the basis of the complaint).

Oroville for failure to train; (III) and a state law claim for assault and battery. Albanese names Officer Sanzone, the City of Oroville, and 100 Doe defendants. (ECF No. 1.)

Defendants Sanzone and the City move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendants argue: (I) Officer Sanzone had probable cause to arrest plaintiff for obstruction under Cal. Pen. Code §148(a) given plaintiff's "willful resistance" against backing up, and the officer is otherwise entitled to qualified immunity; (II) the Monell claim therefore lacks an underlying violation and is otherwise insufficiently pleaded; and (III) given that probable cause existed, there are no unreasonable force allegations against Officer Sanzone for the assault and battery claim. (ECF Nos. 8, 14.)

Plaintiff opposed dismissal, arguing: (I) he was merely recording the officers and was not interfering, thus case law and the statute make clear that Officer Sanzone could not have had probable cause to arrest plaintiff for obstruction; (II) the Monell claim is supported by the false arrest claim and is otherwise sufficiently pleaded; (III) the lack of probable cause means Officer Sanzone could not lay hands on plaintiff, thus supporting the assault and battery claim. Plaintiff submitted video footage from the encounter in support. Plaintiff requests that if the court grants defendants' motion and dismisses any claims, leave to amend be given. (ECF Nos. 11, 12.)

**Legal Standards – Failure to State a Claim**

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Rule 12(b)(6).[3] A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a

---

[3] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

claim to relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986).  The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  Generally, material beyond the pleadings may not be considered in deciding a motion to dismiss, but a court may look to evidence on which the complaint necessarily relies if its authenticity is not contested.  See Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013); see also, e.g., Pooley v. Nat'l Hole-In-One Ass'n, 89 F. Supp. 2d 1108, 1110 (D. Ariz. 2000) (considering the contents of a video in ruling on a motion to dismiss where it formed the basis of the complaint and its authenticity was not in dispute) (citing Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds)).

**Discussion**

As an initial matter, the court notes plaintiff names 100 Doe defendants in his complaint. (ECF No. 1.)  Plaintiff asserts no factual allegations pertaining to any Doe officer defendants, nor does he identify any Doe officer defendants that committed any acts related to his claims.  This is insufficient to put prospective defendants on notice of their alleged actions or omissions that plaintiff claims violate his federal rights.  See Rule 10 (requiring the names of all parties); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (noting that claims under section 1983 require an individualized assessment of each officer's actions).  Given the allegations and content of the judicially noticeable video submitted by plaintiff, it is unclear if any other defendants are potentially liable here, as plaintiff's interactions appear to have been solely with Officer Sanzone. Regardless, plaintiff fails to state any federal or state claim against either of the Doe officer defendants, and so all Doe defendants are dismissed from the action.

**(I)      Title 42 U.S.C § 1983 claims against Officer Sanzone**

Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" against a person acting "under color of any statute, ordinance, regulation, custom, or usage." Gomez v. Toledo, 446 U.S. 635, 639 (1980). "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–394 (1989). Thus, to state a claim for relief under Section 1983, a plaintiff must allege that the defendant (1) acted under color of state law; and (2) caused a plaintiff to be deprived of a right secured by the Constitution or laws of the United States. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).

An officer "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). The causation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer, 844 F.2d at 633.

Here, the complaint references the First, Fourth, Fifth, Eighth, and Fourteenth Amendments regarding plaintiff's encounter with Officer Sanzone. However, only the Fourth and (tangentially) the First and Fourteenth Amendments appear applicable here. See Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States[.]"); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) ("The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence."). Thus, the court construes plaintiff's claim as one brought under the Fourth Amendment, as incorporated under the Fourteenth Amendment due process clause, and as informed by First Amendment principles.

A.      **Constitutional Violation under the Fourth Amendment**

Legal Standards – False Arrest claim under the Fourth Amendment

Claims for wrongful arrest under Section 1983 are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in Graham, 490 U.S. 386.  The constitutionality of a seizure turns on whether "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id. at 397 (quoting Tennessee v. Garner, 471 U.S. 1 (1985)).  This is generally determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id.; Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003) (noting the court should determine Graham constitutional reasonableness). Weighing heavily on the constitutionality of any arrest is "whether, at the moment the arrest was made, the [officer] had probable cause to make it." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Probable cause exists if the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing [plaintiff] had committed or was committing an offense." Id. (citations omitted); Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1044 (2007) (noting a 'reasonable caution' standard for probable cause in California).  "Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); Rodis v. City and County of San Francisco, 499 F.3d 1094 (9th Cir. 2007) (noting how the specific circumstances surrounding the arrest are an indispensable part of the analysis). Courts should examine "the events leading up to the arrest, then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v Pringle, 540 U.S. 366, 371 (2003) (cleaned up).  Probable cause is an objective standard, and the arresting officer's subjective intention is immaterial in judging whether his actions were reasonable under the Fourth Amendment. See United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).  Thus, to state a cognizable claim for false arrest under the Fourth Amendment, plaintiff must allege (among other things) facts showing no probable cause existed to arrest. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998).

Analysis

This case highlights the tension present in Cal. Penal Code § 148, the state's obstruction statute. Subsection (a)(1) states:

> Every person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Subsection (g), added in 2016, states:

> The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person.

Thus, in a case like this one, where plaintiff asserts he was merely filming law enforcement officers as they seized another person, and where defendants assert the officer arrested plaintiff for interfering with that other seizure, the resolution of any false-arrest claim turns on whether probable cause existed to arrest under Section 148(a)—as informed by the events leading up to the arrest. Pringle, 540 U.S. at 371.

According to the complaint (ECF No. 1), and substantially supported by plaintiff's judicially noticeable video (see ECF No. 12 at Ex. A), plaintiff stood behind a small hedge, some 20 feet away from the area where Officer Sanzone and three other officers had seized an individual. Plaintiff's only act at the outset was recording the scene. Officer Sanzone briefly waived his hand at Albanese, said "back up, back up," then turned his back to plaintiff. Officer Sanzone then appears to give plaintiff sustained consideration only after plaintiff quickly retorted by cursing. The other three officers kept their focus on the seized individual. It is reasonable to infer, at the pleadings stage, that the reason Officer Sanzone had any extended interaction with plaintiff was because plaintiff was recording and said "don't give me that f***ing s***." Because Section 148(g) prohibits a probable cause finding in this circumstance, an objectively reasonable officer would know he could not arrest plaintiff for interference. Further, an

7

objectively reasonable officer would know the First Amendment protects "a significant amount of criticism and challenge directed at police officers." City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987).

The court recognizes defendants' argument that because Officer Sanzone did not instruct plaintiff to wholly "leave the scene" but merely to "back up," his order was arguably lawful and Albanese's failure to move constitutes interference. Further, defendants are correct that interference can extend beyond physical acts, as California courts have long held that Section 148 "is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities." In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002) ("No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation."). However, as the video shows, a reasonable juror could also find the entire basis for Officer Sanzone's encounter with plaintiff appears predicated on plaintiff's filming and cursing. The court must take these details into account at the pleadings stage.[4] Rodis, 499 F.3d at 1098 (reminding that the specific circumstances surrounding an arrest are an "indispensable part" of the false arrest analysis).

Defendants' cases in support of their motion are distinguishable on the facts. Defendants' strongest case is In re Muhammed C., 95 Cal. App. 4th 1325, 1330 (2002), wherein the plaintiff was arrested for obstruction under Section 148(a). Officers had arrested another individual and placed him in the back of the squad car. While the officers were across the street, the plaintiff approached the officer's car and carried on a conversation with the arrestee. The officers instructed the plaintiff multiple times to back away from the car, and after a few attempts at this, ultimately arrested the plaintiff for obstruction. Importantly, the plaintiff there was a part of the initial investigation and was not engaged in the same kinds of behavior as Albanese—namely,

---

[4] This is a fine needle to thread, the court recognizes. In this case, however, the historical facts from the video support a reasonable inference that plaintiff was arrested for filming and cursing at the officers. See, e.g., Hernandez v. Cnty. of San Bernardino, 2021 WL 4497934, at *4 (C.D. Cal. Aug. 13, 2021) (finding that a reasonable jury may find plaintiff's standing at a distance and recording was the sole basis for arrest for obstruction). The court is sensitive to the difficulties and fast-moving nature law enforcement officers face. However, being a gadfly is not an arrestable offense. See Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th Cir. 1990).

1 recording the officer's interactions with the public.  Importantly, since Muhammed C. was

2 decided, the California Legislature added subsection (g) explicitly stating that recording of

3 officers in the public performance of their duties does not constitute probable cause for arrest

4 under 148(a).

5       Defendants' other cited cases are distinguishable on the facts to an even greater degree.

6 See Colten v. Kentucky, 407 U.S. 104, 109 (1972) (noting the state maintains an interest in

7 enforcing traffic laws free from bystander interference, but finding the officer's rationale in

8 arresting bystander was based on controlling the scene of a strip search along a busy roadside,

9 posing the risk of an accident); U.S. v. Poocha, 259 F.3d 1077, 1082-83 (9th Cir. 2001)

10 (upholding conviction for obstruction based on bystander's failure to disburse, but where park

11 rangers attempted an arrest surrounded by 30-50 spectators, including plaintiff and ten others who

12 were particularly angry and near the rangers); People v. Quiroga, 16 Cal. App. 4th 961, 968

13 (noting the general proposition that Section 148 can apply in principle to nonverbal conduct

14 involving flight or forcible interference, but finding plaintiff's failure to quickly respond to

15 officer's orders and failure to present identification did not delay or obstruct the officer's duties—

16 reminding Section 148 must be applied with great caution to speech); see also, e.g., Barbere v.

17 Cnty. of Santa Barbara, 2019 WL 988677 (C.D. Cal. Jan. 18, 2019) (noting "section 148 does

18 criminalize complete failure to comply with police orders," but holding that a rational jury could

19 conclude plaintiff's mere verbal resistance and 20 second delay in exiting a vehicle does not

20 amount to probable cause for obstruction); Tillotson v. City of San Francisco, 2017 WL 167706

21 (N.D. Cal. Jan. 17, 2017) (ultimately granting qualified immunity to officer who arrested plaintiff

22 for obstruction, where plaintiff public defender was arrested for obstruction because she delayed

23 the officer's interactions with another individual by stepping in between officer and individual

24 and repeatedly voicing objections to officer's actions);  Davis v. Cty. of San Bernardino, 2009

25 WL 3838287 (C.D. Cal. Nov. 13, 2009) (holding plaintiff's continued defiance in resisting

26 officer's instructions constituted obstruction, but on facts where the plaintiff would not hand over

27 keys to his mom's car that the officer was attempting to impound); Flynn v. Los Angeles Cnty.

28 Chief Prob. Officer Jerry Powers, 2016 WL 7335734 (C.D. Cal. Oct. 24, 2016) (similar reasoning

9

and dispositive facts to Davis); Sorgen v. City & Cnty. of San Francisco, 2006 WL 2583683 (N.D. Cal. Sept. 7, 2006) (finding officer had probable cause to arrest plaintiff for obstruction based on plaintiff's failure to back up during arrest of plaintiff's intoxicated friend, but noting the officer was alone in a rowdy neighborhood late at night and could reasonably believe plaintiff intended to interfere with the arrest by refusing to back up further than 12-15 feet).

If the court is persuaded by any case, Albanese's case most resembles Hernandez v. Cnty. of San Bernardino, 2021 WL 4497934 (C.D. Cal. Aug. 13, 2021).  There, officers were conducting the arrest of a driver for a traffic violation and became aware that the plaintiff, a spectator, was recording the scene for his video streaming channel.  The officers instructed the plaintiff and other onlookers to back up, but plaintiff refused, citing his rights.  The Plaintiff was arrested for obstruction and sued for false arrest.  The court ultimately denied summary judgment for defendant, noting the evidence showed "[p]laintiff appeared to be standing at a distance from the officers and the scene at all times" while recording, and his repeated cursing and challenging of the officers' order to back up should be left for a jury determination.

Applying the Graham framework to this case then, the constitutionality of Officer Sanzone's actions require balancing the government's interest with the gravity of the Fourth Amendment intrusion.  Graham, 490 U.S. 386; Miller, 340 F.3d at 964.  Here, the pleadings and video demonstrate a reasonable jury could determine Officer Sanzone did not have probable cause to arrest plaintiff for obstruction (given the operation of Section 148(g) and facts demonstrated in the video).  Without probable cause to arrest for obstruction, plaintiff's right to be free from unreasonable seizures would have controlled.  Beck, 379 U.S. at 91 (noting that "whether, at the moment the arrest was made, the [officer] had probable cause to make it" weighs heavily on the constitutionality of the officer's actions).

**B. Qualified Immunity**

Legal Standards – Qualified Immunity

In addition to analyzing constitutional reasonableness, the court is to determine whether the individual defendant is entitled to qualified immunity.  Pearson v. Callahan, 555 U.S. 223 (2009).  "[W]hether an official protected by qualified immunity may be held personally liable for

an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 638-39 (1987) (cleaned up); Ballentine v. Tucker, 28 F.4th 54, 64 (9th Cir. 2022). An officer will be denied qualified immunity at the pleadings stage if (1) taking the alleged facts in the light most favorable to the party asserting injury, the officer committed a constitutional violation, and (2) the officer's specific conduct violated "clearly established" law at the time of the alleged misconduct such that a reasonable officer would have understood the conduct to be unlawful. Castro v. County of Los Angeles, 833 F.3d 1060, 1066 (9th Cir. 2016).

The law must be clearly established in a fairly particularized sense, that a reasonable official would understand that what he is doing violates that right. Anderson, 483 U.S. at 640 (internal citations omitted) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful[;] but it is to say that in the light of pre-existing law the unlawfulness must be apparent."); Shafer v. County of Santa Barbara, 868 F.3d 1110, 1117 (9th Cir. 2017). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal citations omitted).

Qualified immunity is a question of law, not a question of fact. Torres v. City of Los Angeles, 548 F.3d 1197, 1210 (9th Cir. 2008). Only when "historical facts material to the qualified immunity determination are in dispute" should the district court submit the factual dispute to a jury. Id. at 1211; see also Newmaker v. City of Fortuna, 842 F.3d 1108, 1116 (9th Cir. 2016) ("Summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt."). If the only material dispute concerns what inferences properly may be drawn from the historical facts, a district court should decide the issue of qualified immunity. Conner v. Heiman, 672 F.3d 1126, 1131 n.2 ("[W]hile determining the facts is the jury's job (where the facts are in dispute), determining what objectively reasonable inferences may be drawn from such facts may be determined by the court as a matter of logic and law."). Importantly, qualified immunity is "an immunity from suit rather than a mere defense to

liability" and "is effectively lost if a case is erroneously permitted to go to trial." Pearson, 555 U.S. at 231. As a result, the Supreme Court has stressed the importance of resolving the issue of qualified immunity at the earliest possible stage in litigation, and thus, qualified immunity may be raised in a Rule 12(b)(6) motion and may be decided before the constitutional-violation question. Id. at 236; Evans v. Skolnik, 997 F.3d 1060, 1066 (9th Cir. 2021).

Analysis

Here, taking the allegations in the complaint as true, and drawing rational inferences from the video, plaintiff was not obstructing the officers' arrest of the individual on the street corner, as Albanese was merely recording the incident (and cursing at the officers). Thus, it may be reasonably inferred Officer Sanzone violated plaintiff's clearly established right to record officers, as well as to verbally criticize them. Plaintiff cites for support City of Houston v. Hill, 482 U.S. 451, 461 (1987); Mackinney v. Nielsen, 69 F.3d 1002, 1007 (9th Cir. 1995); Peloza v. Capistrano Unified School Dist., 37 F3d 517, 521 (9th Cir. 1994); Sloman v. Tadlock, 21 F.3d 1462, 1468 (9th Cir. 1994); and Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th Cir. 1990); as well as Cal. Pen. Code §148(g). While some of these cases are too distinguishable to support denial of qualified immunity, Cal. Pen. Code. § 148(g), Mackinney, and Duran inform officers they may not arrest for obstruction solely because the individual records the officers' public actions or curses at them.

**(II)   Title 42 U.S.C § 1983 against City Defendant under Monell**

Legal Standards

"[L]ocal-government entities are considered 'persons' under Section 1983 and therefore may be liable for causing a constitutional deprivation." See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). However, these entities are only liable "for injuries that arise from an official policy or longstanding custom." Id. at 694. To raise a Monell claim, a plaintiff must allege facts in a complaint "that a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (per curiam) (citations omitted). In addition, a

plaintiff must allege facts demonstrating that the policy/practice/custom was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

A municipality's failure to train its police officers may amount to a policy of deliberate indifference. See Price v. Sery, 513 F.3d 962, 973 (9th Cir. 2008). To state a Monell claim for failure to train, a plaintiff must show (1) "the existing training program [is inadequate] in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." Merritt v. Cnty. of L.A., 875 F.2d 765, 770 (9th Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378 (1989)).

Analysis

Here, plaintiff's complaint alleges the City (via Oroville P.D. supervisors and officers) knew of, approved of, was deliberately indifferent to, and even encouraged Officer Sanzone's "continuing pattern and practice[] of misconduct and or civil rights violation[s,]" thus amounting to a failure to train. (ECF No. 1 at ¶¶ 17-18.) The allegations are raised on "information and belief" and refer back to the facts surrounding plaintiff's arrest (recording of the officers' acts and cursing at the officers while they had detained another individual).

Defendants contends these allegations are conclusory at best and are insufficient to allege a practice or custom so widespread as to create liability for the City.[5] See Trevino, 99 F.3d at 918 (noting that practice or custom claims "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). Defendants note multiple cases in the

---

[5] Defendants also assert the Monell claim should be dismissed based on their arguments that no underlying constitutional violation exists (that Officer Sanzone had probable cause to arrest plaintiff under Section 148(a). See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Here, however, the court has already determined the individual claim will proceed, and so defendants' Monell argument on that basis is denied.

Ninth Circuit and this district where courts have found Monell allegations require more. See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (affirming dismissal of Monell "policy, custom or practice" claim where the complaint only stated the training related to "the custody, care and protection of dependent minors," where this boilerplate made little sense based on the facts of the case); see also, e.g., Harper v. Cnty. of Merced, 2018 WL 5880786, at *6 (E.D. Cal. Nov. 8, 2018) (dismissing Monell claims where the complaint contained a single allegation that the City and County do "not train, or inadequately train[ their] officers regarding the handling of people who are suffering from mental illness, so as not to cause these individuals to become injured"); Cain v. City of Sacramento, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (finding allegations against the County that "it allowed or promoted the type of excessive force alleged elsewhere in the Complaint" did not meet pleading standards for Monell claims); Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1196 (E.D. Cal. 2011) (finding and dismissing Monell claim as "threadbare" where complaint alleged the incident giving rise to the constitutional violation was "indicative and representative" of a pattern, practice, or custom of the city failing to train its officers).

   Plaintiff argued in his briefing that the Monell claim is sufficiently pleaded to put defendants on notice. Plaintiff contends that he needs discovery to obtain the requisite information necessary to be able to allege facts supporting a plausible claim, and dismissal of the Monell claim now due to a lack of facts would bar such discovery. At the hearing, plaintiff's counsel conceded the deficiencies in the pleadings, but stated his "information and belief" has been supplemented by knowledge of other cases against Officer Sanzone and the City, and that these violations are more than just sporadic events. See, e.g., Velazquez v. City of Long Beach, 793 F.3d 1010, 1027 (9th Cir. 2015) (noting approval of a complaint where Monell claim was supported by facts indicating one officer received multiple excessive force complaints similar to the one at issue in the case); Henry v. Cnty. of Shasta, 132 F.3d 512 (9th Cir. 1997) (post-event evidence of identical incidents may show that a municipality had notice of its agents' unconstitutional actions). The court finds the pleadings lacking, but permits plaintiff leave to amend the Monell claim so that he can state more facts.

      **(III)    Assault and Battery against Law Enforcement Officers**

In an assault and battery action against a police officer arising from an arrest, a plaintiff must demonstrate that the officer's use of force was unreasonable. Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1272 (1998). Plaintiff argues that because he has a claim for false arrest herein based on Officer Sanzone's alleged lack of probable cause, the assault and battery claims are cognizable because the officer had no right to lay hands on plaintiff. Given that these claims rise or fall together, each hinging on the jury's ultimate determination regarding probable cause, defendant's motion to dismiss on the assault/battery claim is denied. See, e.g., Evans v. City of San Diego, 913 F. Supp. 2d 986, 999 (S.D. Cal. 2012) (noting claim for assault and battery under California law "flows from the same facts as the Fourth Amendment excessive force claim and is measured by the same reasonableness standard of the Fourth Amendment").

      **Conclusion**

Plaintiff's pleadings suffice on his Section 1983 and Assault/Battery claims. Plaintiff is granted leave to amend his Monell claim to allege additional facts. The first amended complaint should be complete without reference to any prior pleading. See Local Rule 220.

### ORDER

It is HEREBY ORDERED that:

1. Defendants' motion to dismiss (ECF No. 8) is GRANTED IN PART and DENIED IN PART;
2. Plaintiff shall file his first amended complaint within 21 days of this order;
3. Defendants shall file their response within 21 days of plaintiff's filing; and
4. If defendants respond by answer, the parties shall confer within 30 days thereafter on:
   a. their obligations to transmit mandatory disclosures under Rule 26; and
   b. the filing of a joint status report for the entry of a pretrial scheduling order, addressing the relevant portions of Local Rule 240(a), due 7 days after conferring.

Dated: October 12, 2022

alba.1131

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15